**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**SYLVIA JOHNSON,**

**Plaintiff,**

**vs.**                                              **Case No.  1:17cv123-CAS**

**NANCY A. BERRYHILL, Acting
Commissioner of the Social
Security Administration,**

**Defendant.**

_____/

## MEMORANDUM OPINION AND ORDER

This Social Security case was referred to the undersigned upon

consent of the parties by United States District Judge Mark E. Walker.

ECF No. 16, 17.  It is now before the Court pursuant to 42 U.S.C. § 405(g)

for review of the final determination of the Acting Commissioner

(Commissioner) of the Social Security Administration denying Plaintiff's

application for Supplemental Security Income (SSI) pursuant to Title XVI of

the Social Security Act.  *See* ECF No. 1.  After careful consideration of the

record, the decision of the Commissioner is affirmed.

## I. Procedural History and Facts

Plaintiff filed an application for Supplemental Security Income (SSI) on December 31, 2012, alleging a disability beginning on September 7, 2010.  Tr. 37, 165-71.[1]  The application was denied initially on March 22, 2013, Tr. 119-24, and again on reconsideration on July 3, 2013.  Tr. 130-34.  A hearing was requested and a video hearing was held on February 18, 2015, before administrative law judge (ALJ) William H. Greer at which Plaintiff appeared pro se.  Tr. 54-69.  Although informed of her right to representation, Plaintiff chose to appear and testify without the assistance of counsel or other representative.  Tr. 163.  Impartial vocational expert Jackson C. McKay also testified.  Tr. 66-68.

On May 18, 2015, a decision was entered denying Plaintiff's application.  Tr. 37-48.  Plaintiff sought review in the Appeals Council, which denied review on March 17, 2017.  Tr. 1-4.  Thus, the decision of the ALJ became the final decision of the Acting Commissioner and is ripe for review.  Accordingly, Plaintiff, appearing pro se, filed this complaint for judicial review pursuant to 42 U.S.C. §§ 1381, *et seq.,* and 42 U.S.C. § 405(g).  *See* ECF No. 1.

---

[1] Citations to the transcript/administrative record (ECF Nos. 11, 11-1 through 11-11) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

In the decision issued on May 18, 2015, the ALJ made findings

pertinent to this review:

1.  The claimant has not engaged in substantial gainful activity since
December 31, 2012, the application date.  Tr. 39.

2.  The claimant has the following severe impairments: headaches,
vertigo, left carpal tunnel syndrome, degenerative disc/joint disease
of the cervical spine, an anxiety disorder, and an affective disorder.
Tr. 39.

3.  The claimant does not have an impairment or combination of
impairments that meets or medically equals the severity of one of the
listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
Tr. 40.

4.  After careful consideration of the entire record, the undersigned
finds that the claimant has the residual functional capacity to perform
sedentary work as defined in 20 CFR 416.967(a) except with no work
around unprotected heights, no work around moving and hazardous
machinery, or driving motorized vehicles.  The claimant can never
climb ladders, ropes, or scaffolds.  The claimant is limited to no more
than semi-skilled work.  Tr. 41.

5.  The claimant is capable of performing past relevant work as a
customer service representative.  This work does not require the
performance of work-related activities precluded by the claimant's
residual functional capacity.  Tr. 47.

6.  The claimant has not been under a disability, as defined in the
Social Security Act, since December 31, 2012, the date the
application was filed.  Tr. 48.

Based on these findings, and the reasons set forth in the decision, the ALJ

found Plaintiff is not disabled under section 1614(a)(3)(A)[2] of the Social

Security Act.  Tr. 48.

---

[2] Section 1614(a)(3)(A) of the Social Security Act is codified at 42 U.S.C. § 1382.
*See* Higginbotham v. Barnhart, 163 F. App'x 279, 280 n.1 (5th Cir. 2006).

## II. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[3] The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 416.920(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the

---

[4] Residual functional capacity is the most a claimant can still do despite limitations. 20 C.F.R. § 416.945(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 416.946(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work available in significant numbers in the national economy in light of the claimant's RFC, age, education, and work experience. *See* Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1228-29 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(v), (e) & (g). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled and, consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 416.912(a); Moore, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 416.927(c)(2).[5]  "This requires a relationship of both duration and frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.  Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at 1053.

---

[5] This provision applies to claims filed before March 27, 2017.  For claims filed after that date, section 416.920c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

The ALJ may discount the treating physician's opinion if good cause exists to do so. <u>Hillsman v. Bowen</u>, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory." <u>Lewis</u>, 125 F.3d at 1440; <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987)). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th Cir. 1986).

Some opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of

disability."  20 C.F.R. § 416.927(d); *see* <u>Bell v. Bowen</u>, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (1996).  Although physicians' opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility of assessing the claimant's RFC.

A treating physician's opinion that a claimant is unable to work and is necessarily disabled would not be entitled to any special weight or deference.  The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability.  20 C.F.R. § 416.927(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6.  In <u>Lewis</u>, the court noted that "we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinions of the legal consequences of his condition.  Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings."  125 F.3d at 1440.

Generally, more weight is given to the opinion of a specialist "about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(c)(2), (5)[6]; *see also* Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (noting that opinions of specialists may be particularly important, and entitled to greater weight than those of other physicians, with respect to a certain diseases that are "poorly understood within much of the medical community"); Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 65 n.13 (11th Cir. 2010) (unpublished) (same). Although a claimant may provide a statement containing a treating physician's opinion of her remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate determination of disability. 20 C.F.R. §§ 416.912, 416.913, 416.927, 416.945.

## III. Analysis

### A. The Hearing

At the hearing held on February 18, 2015, Plaintiff appeared pro se and testified she is a high school graduate with some college. Tr. 58-59. Her past employment was in the credit department of MCI taking incoming

---

[6] *See* note 5, *supra*.

calls.[7]  Tr. 59.  She testified she is treated at Shands for several problems, and was currently going to Shands twice a week for neuropathy in her left hand.  Tr. 60-61.  She identified her most serious problem, which she believes keeps her from working, as her memory problem.  Tr. 61.  She testified she has had memory problems since 2010 when she was hit on the head by a car trunk.  Tr. 62.  She said she had not had any testing done on her memory.  *Id.*

She testified that the next impediment to her working was her chronic pain in her head and radiating down into her back area.  *Id.*  She said she does not sleep well at night, which causes her to not function well during the day.  *Id.*  She testified that she was taking a lot of pain medication such as naproxen but had to cut back due to risk to her kidneys, and that she started "drinking a little more too to kind of get the pain gone."  Tr. 63, 64.  When asked when she was diagnosed with diabetes, she said she was not sure but had been given two prescriptions for needles and lancets over the last few months.  *Id.*  She is currently taking Metformin for diabetes.  Tr. 64.  She takes amitriptyline for sleep and anxiety, amlodipine, Escitalopram for depression, hydrochorothiazide, losartan, meclizine, and naproxen.  Tr. 64.

---

[7] MCI, Inc., currently a subsidiary of Verizon, was a telecommunication corporation.  *See* http://www.verizon.com/about/news-tag/mci-worldcom.

She said she has constant vertigo, which causes balance problems and dizziness and bothers her eyes. *Id.* She testified she has no adverse side effects from her medications. Tr. 65.

Plaintiff lives with her husband, does light cooking and minor household chores, and goes grocery shopping with her husband. Tr. 65-66. Her husband assists her in bathing due to her balance problem. Tr. 65. She has difficulty driving when she has to turn her head quickly, although she does drive short distances without too many turns. Tr. 66.

The impartial vocational expert, Jackson McKay testified and was asked to assume, as a hypothetical, a person who is 60 years old, with the work background and education testified to by Plaintiff, who is capable of sedentary work, with no unprotected heights, no work around moving or hazardous machinery or driving motorized vehicles, no ladders or scaffolds, and no more than semi-skilled work. Tr. 67. The vocational expert was asked if such an individual could perform any of the past work of Plaintiff, which was characterized by the vocational expert as customer service representative. Tr. 67. The vocational expert testified that such an individual could perform the past work of customer service representative, which was consistent with the Dictionary of Occupational Titles # 249.367-026, and which is sedentary and semi-skilled. *Id.*

The Plaintiff was given an opportunity to pose additional questions to the vocational expert, but declined to do so.  Tr. 68.

### B. The Findings of the ALJ

The ALJ found in the decision issued on May 18, 2015, that Plaintiff has the following severe impairments: headaches, vertigo, left carpal tunnel syndrome, degenerative disc/joint disease of the cervical spine, an anxiety disorder, and an affective disorder.  Tr. 39.  An impairment may be found to be severe for step two purposes as a threshold inquiry.  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).  That only means that the impairment is not so slight and its effects not so minimal that it would clearly not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience.  *Id.*  A finding that an impairment is severe does not require a specific limitation based on that impairment unless supported by the medical record.  *See, e.g.,* Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 2006) (rejecting claimant's contention that the ALJ decision was 'internally inconsistent' where the ALJ found that an impairment was severe but failed to include limitations relating to impairment in RFC assessment); Griffeth v. Comm'r of Soc. Sec., 217 F. App'x. 425, 427-28 (6th Cir. 2007) (unpublished) (same);

Davis v. Comm'r of Soc. Sec., No. 6:12-cv-1694-ORL-36, 2013 WL
6182235, at *6 (M.D. Fla. Nov. 25, 2013) (same).

The ALJ found that the medical record substantiated claims of
evaluation and treatment for vertigo and headache complaints, and that
imaging studies revealed degenerative disc/joint disease of the cervical
spine.  Tr. 39.  The ALJ found the medical record also disclosed treatment
for depression, generalized anxiety disorder, posttraumatic stress disorder,
and mood disorder.  *Id.*  The record disclosed treatment for hypertension,
and diverticulosis, which were effectively managed with conservative
treatment.  *Id.*  The ALJ found that the record did not document any
restrictions placed on Plaintiff as a result of hypertension and diverticulosis,
which were found to be non-severe impairments.  Tr. 39.  Diabetes was not
found to be a medically determinable impairment based on the medical
records' failure to document a definitive diagnosis.  Tr. 40.

As to Plaintiff's mental impairments, the ALJ found that the
impairments, singly or in combination, do not meet or medically equal the
criteria of listings 12.04 and 12.06 of 20 CFR 404, Subpart P, Appendix 1.
Tr. 40.  The ALJ found that the impairments did not satisfy "paragraph B,"
which requires that the mental impairments must result in at least two of the
following: marked restriction of activities of daily living; marked difficulties in

maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. *Id.* "Marked" means more than moderate but less than extreme. The ALJ found that the Plaintiff had no more than mild restriction in activities of daily living—she remained capable of living independently in her household, adequately tending to personal care, helping with household chores, doing light cooking, helping care for pets, driving short distances, managing some personal finances, attending medical appointments, shopping with her husband, maintaining relationships with family members, and occasionally attending church. Tr. 40; *see also* Tr. 65-66, 229, 294, 381, 534. The ALJ found Plaintiff has moderate difficulty in maintaining concentration, persistence, or pace and has difficulty with memory and attention. Tr. 40-41. No episodes of decompensation were noted. The ALJ also found that "paragraph C" criteria—medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs not attenuated by medication or psychosocial support plus one of three other conditions— were not satisfied. Tr. 41.

As to the effect of Plaintiff's mental impairments on her RFC, the ALJ noted that the record supports a finding that Plaintiff has severe mental impairments and is limited to some extent by the impairments.  Tr. 43.  For that reason, the ALJ limited the Plaintiff to no more than semi-skilled work in the RFC to account for the mental limitations.  Tr. 44.  No additional limitations relating to mental impairments were found by the ALJ to be necessary.  *Id.*  The ALJ noted that Plaintiff reported that her memory problem was the main reason she cannot work, but had not had any memory testing.  Tr. 42.  During her consultative psychological examinations Plaintiff's cognitive ability was noted to be grossly intact. Tr. 44; Tr. 534, 552.  The ALJ also cited Plaintiff's appropriate responses to questions at the hearing and the fact that she provided a good history of her medical complaints.  She was also found to be a good historian during her psychological evaluation by clinical psychologist Diana M. Benton, Psy.D.  Tr. 44; Tr. 380.

The ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary, semi-skilled work except with no work around unprotected heights or moving or hazardous machinery, no driving of motorized vehicles, and no climbing ladders, ropes, or scaffolds.  Tr. 41. This RFC was based in part on the conclusion that Plaintiff's statements

concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible for the reasons stated in the decision.  Tr. 42.  The ALJ cited the household activities that Plaintiff testified she engaged in and the fact that Plaintiff can drive short distances.  Tr. 45.  Brain and head imaging failed to reveal abnormalities that explain subjective complaints of vertigo/dizziness.  Tr. 42; Tr. 352-54; Tr. 460; Tr. 546.  The ALJ further noted that oculomotor studies, active head rotation testing, positional testing, and Dix/Hallpike testing in May 2011 were reportedly normal, although bi-thermal caloric testing suggested the possibility of left horizontal canalithiasis.  Tr. 42; Tr. 354.  Records from a consultative examination by Dr. Lance Chodosh in February 2012 noted the complaints of dizziness and feeling of imbalance, but Plaintiff demonstrated good coordination with normal standing balance, slow but normal gait, and heel and toe walking.  Tr. 42-43; Tr. 373.  The ALJ also noted that vestibular therapy was offered, but Plaintiff had inconsistent attendance and failed to demonstrate compliance with home exercises.  Tr. 43; Tr. 494-519.  The ALJ did credit the opinion of treating neurologist Dr. George G. Feussner that Plaintiff must avoid heights and dangerous equipment, and must not operate motorized vehicles, because of vertigo.  Tr. 46; Tr. 348.  These

recommended restrictions were given great weight and were reflected in the RFC found by the ALJ.  Tr. 41, 46.

The ALJ found that Plaintiff's headaches were a severe impairment, but found the records showed improvement with Toradol treatment.  Tr. 43. In February 2015, in a visit to Meridian Behavioral Healthcare, Inc., Plaintiff denied chronic pain.  *Id.*; Tr. 550.  As for carpal tunnel syndrome symptoms, the ALJ found that electrodiagnostic testing in 2015 revealed carpal tunnel syndrome in Plaintiff's left hand, but physical findings had not documented significant associated functional limitations and treatment records do not document complaints of limitation to her examining and treating sources.  Tr. 43.  The ALJ noted that although Plaintiff alleges that sleep problems affect her during the day, she denied sleep problems at the February 2015 mental health evaluation.  Tr. 45; Tr. 550-51.  The ALJ concluded that physical examinations have revealed minimal objective findings and diagnostic studies have failed to reveal evidence of disease significant enough to preclude all work activity.  Id.

In determining that Plaintiff has the residual functional capacity to perform sedentary, semi-skilled work, the ALJ also noted that the medical records showed Plaintiff's treatment for her allegedly disabling impairments has been essentially conservative in nature and that Plaintiff had failed to

follow up on some of the recommendations made by her examining and treating providers.  Tr. 44.  Although the record indicates that Plaintiff had limited resources for medical treatment, the ALJ found that she had not provided evidence that she sought treatment at low or no cost or was denied treatment for lack of funds.[8]  Tr. 44-45.  This fact was cited only as an indication that Plaintiff's impairments were not as severe or disabling as alleged.  Tr. 45.  Additionally, the ALJ cited the fact that in the last fifteen years, Plaintiff had only marginal or sporadic work, with only two years of earnings, which raised a question regarding whether Plaintiff's continuing unemployment was due to medical necessity from her impairments.  Tr. 45; Tr. 178.

The opinion evidence relied on by the ALJ included Dr. Feussner's 2011 recommendation that due to Plaintiff's post-traumatic vertigo, she should permanently avoid heights, dangerous equipment, and operating motorized vehicles.  Tr. 46; Tr. 348.  The ALJ gave little weight to the February 2012 opinion of consultative physician Dr. Chodosh that Plaintiff could stand, walk, sit, bend at the waist, squat, kneel, lift, carry, handle objects, see, hear, and speak normally.  Tr. 46; Tr. 374.  The ALJ also gave

---

[8] Plaintiff did obtain some prescription refills and other services at the free Equal Access Clinic at the University of Florida College of Medicine in 2012.  Tr. 388-434.

little weight to the July 2013 opinion of the State agency medical

consultant, who reviewed the evidence and determined that the Plaintiff

was capable of a range of medium exertional work activity.  The ALJ found

that the totality of the evidence showed Plaintiff is more limited than

reported by Dr. Chodosh and the State agency medical consultant and that

a range of sedentary work was more appropriate.  Tr. 46; Tr. 102.

As to Plaintiff's mental limitations, the ALJ gave little weight to the

January 2012 opinion of Susan Armstrong, LMHC, Ph.D., who opined that

Plaintiff was not a candidate for work because of chronic PTSD and

unresolved injuries.  Tr. 46; Tr. 367-69; 528-31.  The reason for giving little

weight to this opinion was that the totality of the evidence, including the

"limited course of mental health treatment received by the claimant," failed

to establish work-preclusive limitations.  Tr. 46.  Some weight was given,

however, to the March 2012 consultative psychological evaluation of

Dr. Benton, who opined that Plaintiff's mood symptoms would impact her

capacity for concentration and memory, and thus her ability to perform

complex tasks.  For this reason, the ALJ concluded that Plaintiff was limited

to no more than semi-skilled work.  Tr. 46; Tr. 380-83.

No significant weight was given to the opinion of psychologist William

E. Beaty, Ph.D., assigning Plaintiff a Global Assessment of Functioning

(GAF) score of 45, which indicates serious limitations in functioning, because this level of impairment is not consistent with the Plaintiff's course of mental health treatment or the level of functioning apparent in Plaintiff's wide array of daily activities.  Tr. 46; Tr. 533-35.  Some weight was given to the 2013 opinions of the State agency psychological consultants Maxine Ruddick, Ph.D., and Mercedes DeCubas, Ph.D., who reviewed the record and determined that Plaintiff remained capable of understanding, remembering, and carrying out simple instructions, following a schedule and sustaining activity in a routine setting with no time work, and needed few changes to avoid stress.  Tr. 46; Tr. 83, 99.  The ALJ concluded that these opinions were consistent with the medical record that Plaintiff has severe mental impairments, but that the course of treatment and her capacities and abilities demonstrated in her daily living indicate that the claimant is capable of semi-skilled work.  Tr. 46-47.  Limited weight was given to the statements of individual and family members in support of her disability claim because the individuals are not medically trained, are not disinterested parties, and their opinions are not consistent with the record. Tr. 47; Tr. 313-16.

## C. Discussion of the Issues

In her memorandum in support of her position, Plaintiff does not challenge the substantial evidence supporting the ALJ's decision, but contends that the Appeals Council erred in failing to consider new and material evidence revealing she was diagnosed with and was being treated for severe left hand neuropathic pain condition. ECF No. 18 at 3. Plaintiff also argues that the Appeals Council erred in failing to remand the matter to the ALJ to conduct further proceedings on this alleged new and material evidence; and that such a reconsideration would show that she is suffering from an impairment that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 3-4.

Plaintiff cites additional evidence submitted to the Appeals Council on March 13, 2017, which evidence Plaintiff contends documents her diagnosis of severe neuropathic pain condition and links that condition to her left hand carpal tunnel syndrome.[9] ECF No. 18 at 2-3; Tr. 12-22. Evidence submitted to the Appeals Council must be chronologically

---

[9] Plaintiff also alleges that evidence submitted to the Appeals Council consisting of records dated January 22, 2015, from Shands Hospital were submitted to the Appeals Council but do not appear in the record. ECF No. 18 at 2. However, the Appeals Council notified Plaintiff that it received12 pages of records from Shands Hospital dated January 22, 2015, and those records appear in the record as Exhibit 16 F (Tr. 23; Tr. 565-76). Those records do not pertain to carpal tunnel syndrome or severe neuropathy.

relevant to the ALJ's decision.  *See* Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999).  Under 20 C.F.R. § 416.1470, the Appeals Council will consider new and material evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b).  *See also* Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007) (stating that "[t]he Appeals Council must consider new, material, and chronologically relevant evidence . . . .). When a claimant has properly presented new evidence to the Appeals Council, the reviewing court must consider whether that new evidence renders the denial of benefits erroneous.  *Id.* at 1262.

The Shands records dated December 12, 2014, submitted by Plaintiff to the Appeals Council, state that Plaintiff had been diagnosed with carpal tunnel syndrome.  Tr. 12.  A clinical neurophysiological study conducted on February 22, 2015, indicated "evidence of left carpal tunnel syndrome." This evidence was not new.[10]  Tr. 14.  Plaintiff also submitted to the Appeals Council progress notes from Robert C. Decker, M.D., from a February 14, 2017, visit which indicates Plaintiff was diagnosed with carpel tunnel syndrome, and which cited pain and swelling in the left hand.  Tr. 15.

---

[10] This study was already in the record in Exhibit 15F, and was before the ALJ at the time the ALJ's decision was rendered.  *See* Tr. 559.

Case No. 1:17cv123-CAS

The physical examination notes from that visit indicate that wrist extension, wrist flexion, and finger abduction on the left were 5/5. Tr. 17. The notes refer to a "[h]ealed carpal tunnel incision" and state that strength testing was deferred due to pain at the wrist/surgery site. Tr. 18. The notes from that date also indicate neuropathic pain of the left hand. Tr. 19. The notes from February 2017 do not indicate that they relate back to the time before the ALJ decision and, significantly, they do not identify or direct any functional limitations stemming from either carpal tunnel syndrome or neuropathic pain.

The ALJ considered Plaintiff's carpal tunnel syndrome and found that it constituted a severe impairment, but concluded that the record did not document significant associated functional limitations. Tr. 43. Plaintiff stated at the hearing that she was in therapy for her "fingers" and that she was told she had neuropathy. Tr. 61. However, when asked the main impediment to her working, Plaintiff testified it was her memory problems followed by pain in her head and neck that keeps her from sleeping, not carpal tunnel syndrome or neuropathic pain, even though in 2015 she reported no chronic pain in her visit to Meridian. Tr. 61-62; Tr. 556.

The records submitted to the Appeals Council, when considered in conjunction with the totality of the evidence, do not demonstrate that the

decision of the ALJ was erroneous or requiring reconsideration. The Appeals Council considered the additional evidence submitted by Plaintiff concerning her left hand carpal tunnel syndrome and neuropathic pain and concluded that nothing in the records provided a basis for altering or remanding the ALJ's decision. Tr. 1-5. Because Plaintiff has not identified any basis on which to conclude that the Appeals Council erred in consideration of the additional records provided by Plaintiff, this aspect of Plaintiff's claim is without merit.

Plaintiff filed an unauthorized reply (ECF No. 20) to the Defendant's memorandum in this court, and attached new evidence in the form of a November 22, 2017, letter from Barker Paige Comstock, M.D., of UF Health Internal Medicine. ECF No. 20 at 6. The letter indicates that Plaintiff has chronic ongoing pain in her left hand attributed to carpal tunnel syndrome complicated by complex regional pain syndrome which causes difficulty in typing at a high frequency and doing prolonged computer work. *Id.* The issue in a disability case is whether a claimant is "entitled to benefits during a specific period of time, which was necessarily prior to the date of the ALJ's decision." Wilson, 179 F.3d at 1279. The Court reviews the decision of the ALJ as to whether Plaintiff was entitled to benefits during that specific time period. Because the information in Dr. Comstock's

letter is dated after the ALJ's decision and does not indicate it relates back to the time period at issue. *See id.*

New evidence will be considered by the reviewing court only to determine if remand is warranted under sentence six of 42 U.S.C. § 405(g). *Id.* at 1267-68. To satisfy the criteria for a remand under sentence six, a claimant must establish that the evidence is new and noncumulative; the evidence is material such that it is relevant and probative and affords a reasonable probability that it would change the administrative result; and there is good cause for the failure to submit the evidence at the administrative level. *See* Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986). Plaintiff's left hand carpal tunnel syndrome symptoms were discussed in the medical record and considered by the ALJ, who found as a severe impairment that Plaintiff has left carpal tunnel syndrome. The ALJ concluded, however, that the physical examination findings have not documented significant associated functional limitations or complaints of limitation to her examining and treating sources. Tr. 39, 43; Tr. 559-60.

The new evidence, even if it was applicable to the time period in question, does not require a remand under § 405(g). The November 22, 2017, letter does not indicate that Plaintiff cannot use her left hand, but only states that her carpal tunnel syndrome complicated by complex regional

pain syndrome causes her "trouble" typing at "a high frequency" and "doing prolonged computer work."  In light of the totality of the medical evidence and Plaintiff's testimony, even if this evidence had been before the ALJ or Appeals Council, there is no reasonable probability that it would have changed the administrative result.

Plaintiff also contends that the carpal tunnel syndrome and neuropathy identified in the medical records meets or medically equals Listing 11.14(B) of 20 C.F.R. Part 404, Subpart P, Appendix 1.  ECF No. 3-5.  That listing is for "Peripheral neuropathies."  Under Listing 11.14, peripheral neuropathy is defined as:

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
>
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following: 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or 2. Interacting with others (see 11.00G3b(ii)); or 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.14.  "Extreme limitation" refers to "the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities" without

assistance.  *Id.* at § 11.00(D)(2).  "[M]arked limitation means that, due to the signs and symptoms of your neurological disorder, you are seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities."  *Id. at* § 11.00(G)(2)(a).  "The persistent and intermittent symptoms must result in a serious limitation in your ability to do a task or activity on a sustained basis."  *Id.*  The Act further provides:

> Physical functioning.  Examples of this criterion include specific motor abilities, such as independently initiating, sustaining, and completing the following activities: Standing up from a seated position, balancing while standing or walking, or using both your upper extremities for fine and gross movements (see 11.00D). Physical functioning may also include functions of the body that support motor abilities, such as the abilities to see, breathe, and swallow (see 11.00E and 11.00F).  Examples of when your limitation in seeing, breathing, or swallowing may, on its own, rise to a "marked" limitation include: Prolonged and uncorrectable double vision causing difficulty with balance; prolonged difficulty breathing requiring the use of a prescribed assistive breathing device, such as a portable continuous positive airway pressure machine; or repeated instances, occurring at least weekly, of aspiration without causing aspiration pneumonia.  Alternatively, you may have a combination of limitations due to your neurological disorder that together rise to a "marked" limitation in physical functioning. We may also find that you have a "marked" limitation in this area if, for example, your symptoms, such as pain or fatigue (see 11.00T), as documented in your medical record, and caused by your neurological disorder or its treatment, seriously limit your ability to independently initiate, sustain, and complete these work-related motor functions, or the other physical functions or physiological processes that support those motor functions. We may also find you seriously limited in an area if, while you retain some ability to perform the function, you are unable to do so consistently and on a sustained basis. The

limitation in your physical functioning must last or be expected
to last at least 12 months.  These examples illustrate the nature
of physical functioning. We do not require documentation of all
of the examples.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.00G3a.  The medical

record and other evidence in this case do not demonstrate that Plaintiff has

a "marked limitation" in her functioning, nor does it demonstrate that she

had "extreme limitation" in her ability to use her left hand.  The examples of

trouble caused by Plaintiff's left hand carpal tunnel syndrome and related

pain noted by Dr. Comstock in his November 2017 letter submitted with

Plaintiff's unauthorized reply do not support a finding of marked or extreme

limitation of Plaintiff's functionality or her total disability.

In her unauthorized reply, Plaintiff also argues that the ALJ erred in

finding she could do past relevant work as a customer service

representative because that job ended in 2001 and the Vocational Expert

did not testify that such work exists in significant numbers in the national

economy.  ECF No. 20 at 2-3.  As the ALJ noted in the step four analysis,

Plaintiff's past relevant work experience of customer service representative

met the requirement that it was done "within the past 15 years, lasted long

enough for [the claimant] to learn to do it, and was substantial gainful

activity."  Tr. 47; *see* § 416.965(a); § 416.960(a).

In concluding that Plaintiff could perform her past relevant work in the step four analysis, based on her RFC and other stated factors, the ALJ was not required to also find that such jobs exist in significant numbers in the national economy. Section 416.920(a)(4)(iv) provides that at step four, if the Commissioner finds that the Plaintiff can do past relevant work, "we will find that you are not disabled." Section 416.960(b)(3) also provides that if it is determined that the Plaintiff has the residual functional capacity to do past relevant work, the Commissioner "will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy." Thus, the ALJ did not err in finding Plaintiff can do past relevant work without also finding that the work exists in significant numbers in the national economy. At step four, the claimant bears the burden of providing she cannot perform past relevant work. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also* Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) ("Through the fourth step, the burden of production and proof is on the claimant."). Plaintiff has not carried this burden.

## IV. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.  Further, no error has been shown in the actions of the Appeals Council in denying review.  Accordingly, pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's application for Supplemental Security Income benefits is **AFFIRMED.**  The Clerk shall enter judgment for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on December 5, 2017.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**